901 P.2d 1205

In the Matter of the APPEAL IN MARICOPA COUNTY, JUVENILE ACTION NO. JV–508801.

In the Matter of the APPEAL IN MARICOPA COUNTY, JUVENILE ACTION NO. JV–509382.

In the Matter of the APPEAL IN MARICOPA COUNTY, JUVENILE ACTION NO. JV–510161.

Nos. 1 CA–JV 94–0063, 1 CA–JV 94–0081 and 1 CA–JV 95–0010.

Court of Appeals of Arizona, Division One, Department E.

April 4, 1995.

Review Denied Sept. 12, 1995.

---

Dean Trebesch, Maricopa County Public Defender by Helene F. Abrams, Deputy Public Defender, Phoenix, Christina Phillis, Margaret C. Morse, Deputy Public Defenders, Mesa, for appellants.

Grant Woods, Atty. Gen. by Paul J. McMurdie, Chief Counsel, Crim. Appeals Section, Phoenix, and Richard M. Romley, Maricopa County Atty. by Elizabeth B. Ortiz, Deputy County Atty., Mesa, for appellee.

OPINION

NOYES, Judge.

Each appellant was adjudicated a delinquent child based on allegations that he had molested another child. The juvenile court placed each appellant on probation and, at the request of the State, ordered as a condition of probation that the juvenile provide a blood sample to the Arizona DNA Identification System. Each appeal challenges only the legality of the DNA-testing order. We conclude that the juvenile court lacks authority to enter those orders.

The appeals are factually unrelated but consolidated because they present only the same legal issue. There is no need to discuss the underlying facts, other than to note that in two of the cases the State requested, and the juvenile court denied, transfer of the juvenile for prosecution as an adult, and in none of the cases was the victim exposed to the juvenile's blood or bodily fluids. In granting the State's motion to order DNA testing in each of the cases, the courts provided varying explanation and regulation. In JV–508801, Judge Campbell stated:

THE COURT FINDS that it has inherent authority to order DNA testing of this juvenile as a term of probation in a case of a child molest conviction as a deterrent to reoffend and encouragement to submit to treatment.

IT IS ORDERED that the DNA testing reports shall be handled in such a manner that the juvenile's name be kept confidential at the DNA Bank. The sample should be identified with a Juvenile number only such as is used on a matter under appeal. The State would be required to petition for authority to release name of the juvenile for the sample.

In JV–509382, Judge Armstrong stated, "IT IS ORDERED granting the State's Motion for DNA testing.... The juvenile may petition the court any time prior to his 18th birthday for an order to seal or destroy the DNA prints based on his rehabilitation. The Court will decide the issue after hearing." In JV–510161, Commissioner Waddell stated, "IT IS ORDERED that the juvenile undergo

DNA testing." Each court stayed its own order pending appeal.

The appellants present several challenges to the legality of the DNA-testing orders. We discuss only the one we find dispositive: the argument that the juvenile court has neither express nor inherent authority to order a juvenile delinquent into the Arizona DNA Identification System.

The Arizona DNA Identification System was created in 1993 by the enactment of Ariz.Rev.Stat.Ann. ("A.R.S.") section 41–2418(A) (Supp.1994), which provides: "The Arizona Deoxyribonucleic Acid Identification System is established in the department of public safety ["DPS"] for the purposes of conducting deoxyribonucleic acid testing and analysis pursuant to §§ 13–4438 and 31–281."

A.R.S. section 13–4438 (Supp.1994) requires that, when a person convicted of a sexual offense is released from incarceration or placed on probation, the responsible agency "shall secure a blood sample sufficient for [DNA] testing and extraction" and transmit it to DPS. A.R.S. section 31–281 (Supp.1994) requires that a person convicted of a sexual offense "shall submit to [DNA] testing for law enforcement identification purposes. Reports of the tests shall be maintained by the department of public safety."

▮ The above-referenced sex-offender statutes are the only feeder statutes for the Arizona DNA Identification System, and they apply only to persons who have been convicted of a sexual offense. A juvenile delinquent is not such a person. A.R.S. section 8–207(A) (1989) provides that adjudication of delinquency "shall not be deemed a conviction" (except as provided in A.R.S. section 28–444(C) (Supp.1994) regarding certain traffic offenses). See also Webb v. Rose, 20 Ariz.App. 450, 452, 513 P.2d 988, 990 (1973) ("It is clear that a final disposition of a delinquency matter by the Juvenile Court does not constitute a 'conviction' ...").

The legislative history of A.R.S. section 41–2418(A) indicates that it was enacted as part of the national effort to identify and deter repeat sex criminals:

[There is a] need for the DNA identification system and its ability to readily identi-

fy repeat criminals in certain cases, including rape.

. . . .

[H]aving access to DNA results of sex offenders helps to identify repeat offenders and ... DNA testing would not only aid in investigative efforts but serve as a deterrent.

. . . .

Mr. Carey stated that Arizona was one of six "pilot states" selected to participate in the federal DNA testing program. Mr. Carey stated that at the present time, Arizona was unable to connect with the national DNA database because Arizona's database was not yet up and running. Mr. Carey explained that having access to DNA test results of sex offenders helps to identify repeat offenders and that DNA testing would not only aid in investigative efforts but serve as a deterrent.

*DNA Testing: Minutes of Hearings on S.B. 1217 Before the Senate Judiciary Comm. and the Senate Appropriations Comm.,* 41st Legis., 1st Reg.Sess. (Feb. 16 & 24, 1993) (remarks of Todd Griffith, Crime Laboratory Superintendent, Department of Public Safety and Rob Carey, Deputy Attorney General).

Nothing in the statutes (or legislative history) relevant to the Arizona DNA Identification System refers to delinquent children, and that omission is significant. If the legislature intended that delinquent children be included in a DNA data bank of convicted sex criminals, it would have legislated to that effect, as it has in other instances. For example, A.R.S. section 13–1415 (Supp.1994) requires that persons arrested for or convicted of a sexual offense submit to testing for the HIV virus in certain circumstances. This statute applies to convicted persons, which means that it does not apply to delinquent children—but the legislature has enacted another statute which does. A.R.S. section 8–241(N) (amended 1994) provides:

N. On the request of a victim of a delinquent act that may have involved significant exposure as defined in § 13–1415 [contact of the victim's ruptured or broken skin or mucous membranes with a person's blood or body fluids, other than tears, sali-

va or perspiration ...] or that if committed by an adult would be a sexual offense, the prosecuting attorney shall petition the adjudicating court to require that the delinquent child be tested for the presence of the human immunodeficiency virus.

 The legislature created the Arizona DNA Identification System by enacting A.R.S. section 41–2418(A), and it created the data base for that system by enacting A.R.S. sections 13–4438 and 31–281. Because these statutes apply to certain convicted persons, they are criminal code statutes. Because they are criminal code statutes, they cannot be expanded by the courts. *See Vo v. Superior Court,* 172 Ariz. 195, 204, 836 P.2d 408, 417 (App.1992) ("Arizona is a 'code state,' and this court is legislatively precluded from creating new crimes [and punishments] by expanding the common law through judicial decision. A.R.S. § 13–103."). "Defining crimes and fixing penalties are legislative, not judicial functions." *State v. Wagstaff,* 164 Ariz. 485, 490, 794 P.2d 118, 123 (1990) (citing *State v. Marquez,* 127 Ariz. 98, 103, 618 P.2d 592, 597 (1980)).

 The dissent argues that the juvenile court has the discretion to do what it did here. We agree with the dissent's general discussion about the broad powers of the juvenile court in imposing conditions of probation; nothing we say here should be construed as a new limitation on those broad powers. We disagree, however, with any suggestion that the juvenile court can expand the criminal code, which is essentially what it did in these cases by subjecting delinquent children to criminal code regulations that the legislature enacted expressly for convicted sex offenders.

The Arizona DNA Identification System was enacted as part of a legislative response to sex crimes by adults. Whether to include delinquent children in that system is for the legislature to decide—together with safeguards and regulations that provide more uniform direction to DPS and the national law enforcement computer network than will be found in minute entry orders in individual juvenile court cases. Because the legislature has not acted regarding entry of delinquent children into the Arizona DNA Identification System, the law as it presently exists in Arizona does not permit ordering delinquent children into that system. *See Matter of Maricopa County Juvenile Action No. JV–128676,* 177 Ariz. 352, 353, 868 P.2d 365, 366 (App.1994) ("In exercising its discretion, the juvenile court is not, however, authorized to misapply the law or a legal principle.").

We have reviewed the records for fundamental error and have found none. The adjudications and dispositions are affirmed, as modified by our order that the DNA-testing orders are hereby vacated.

GARBARINO, J., concur.

LANKFORD, Presiding Judge, dissenting.

I respectfully dissent from the opinion that the juvenile court lacks the authority to require DNA testing as a condition of probation.

The majority's reasoning is straightforward enough. Noting that the Arizona Legislature has required DNA testing of adults and HIV testing of juveniles, the majority argues that the legislature could not have intended to allow DNA testing of juveniles because the legislature did not expressly authorize it.

The principal difficulty with the majority's argument is this: The fact that the legislature has not *required* testing does not mean that testing is *prohibited.* It is one thing to require a test; it is another to forbid the test. The legislature has not forbidden DNA testing of juveniles. On the contrary, the legislature has accorded the superior court broad powers regarding the disposition and treatment of juveniles.

Both of the testing statutes cited by the majority involve legislative mandates. A.R.S. Section 13–4438 states that the agency "*shall* secure a blood sample" for DNA testing. (Emphasis added). A.R.S. section 31–291 states that the convicted person "*shall* submit" to a DNA test. (Emphasis added).

We are not concerned here with whether the juvenile court *must* order a DNA test, but instead with whether it *may* do so. The answer to the latter question is not found in

the statutes discussed by the majority. As the majority itself points out, A.R.S. sections 13–4438 and 31–281 apply only to adults convicted of a crime, not to juveniles adjudicated to be delinquent.

The superior court's authority to order testing of juveniles is instead found in the statute governing disposition of juveniles. In that statute, the legislature gave the court broad authority to impose conditions of juvenile probation. A.R.S. section 8–241(A)(2)(b) provides: "[T]he court may enter judgment as follows: ... 2. It may award a delinquent child: ... (b) to a probation department, subject to such conditions as the court may impose."

The juvenile court thus "may" impose conditions of probation. Contrary to the majority's assertion, the juvenile court need not "expand the criminal code" to do so. When acting in juvenile matters, the court's authority comes not from the criminal code but from the statutes governing juvenile proceedings. The statute allowing the court to make dispositions (including probation with conditions) of juvenile matters is ample authority.

Indeed it is settled that the juvenile court has very broad discretion to impose conditions of probation. The court's disposition of juveniles is reviewed only for abuse of discretion. *In the Matter of Appeal in Maricopa County Juvenile Action No. JV–128676*, 177 Ariz. 352, 353, 868 P.2d 365, 366 (App.1994). Specifically, "[a] condition of probation which does not violate basic fundamental rights and bears a relationship to the purpose of probation will not be disturbed on appeal." *In the Matter of Appeal in Pima County Juvenile Action No. J–20705–3*, 133 Ariz. 296, 298, 650 P.2d 1278, 1280 (App.1982).

When ordered as a condition of probation, DNA testing is within the juvenile court's broad authority to impose conditions of probation. Although the juveniles argue that their constitutional right to privacy is violat-

ed by these court orders, the majority does not rest its holding on a constitutional violation. I therefore do not address this issue.[1] The testing also bears a reasonable relationship to the purpose of probation. It is settled that "[t]he court may ... order certain conditions of probation to control the behavior of the child." *Matter of Pima County*, 133 Ariz. at 297, 650 P.2d at 1279. Each of these juveniles has been adjudged to have sexually molested a child. Obtaining the juvenile's DNA "fingerprint" is an obvious attempt to deter future sex crimes. The DNA testing order thus bears a relationship to the purpose of probation, which is in part to prevent recurrences of these offenses.

Indeed, it would be incongruous for the court to lack this authority. The juvenile court's jurisdiction over juveniles who commit crimes arises when the court exercises its "discretion [to] suspend criminal prosecution of children." Ariz. Const. art. 6, § 15. "Thus, it is the suspension of 'criminal prosecution,' that is, prosecution of juveniles as if they were adults, which is left to the discretion of the superior court judge sitting as a juvenile judge." *In the Matter of Appeal in Maricopa County, Juvenile Action No. JV–122733*, 172 Ariz. 542, 544, 838 P.2d 1303, 1305 (App.1992); *accord, State v. Superior Court (J.C.S.)*, 180 Ariz. 384, 884 P.2d 270 (App.1994).

Thus, the superior court has the power to treat a juvenile as an adult and subject the juvenile to criminal penalties, including mandatory DNA testing. If the juvenile court has this greater, more drastic power to subject the juvenile to the full range of criminal penalties, then surely it has the lesser power to order DNA testing as part of its broad discretion to impose conditions of probation.

The majority states that the juvenile court ordered that "the juvenile provide a blood sample to the Arizona DNA Identification System." (Slip Opinion at 2).[2] It then ar-

---

1. Nor does the majority decide another issue: Do the orders exceed the jurisdiction of the juvenile court by contemplating that the DNA test results will be maintained or used after the juveniles' eighteenth birthdays? While I am concerned that the DNA information be appropriately safeguarded, these matters are not decisive to the

majority because, in its view, the courts lack power to obtain the information in the first instance.

2. Actually, it appears that only information about the DNA sample, and not body tissue or fluids,

gues that the court was powerless to do so because juveniles are not statutorily included in the Arizona DNA Identification System.

The first difficulty with this argument is that only one of the three orders in these appeals indicated that the sample would be sent to the Arizona DNA Identification System. That order also directed that the test report be kept "confidential" there. One of the other two orders merely directed that the sample be obtained, and the third directed that a sample be acquired "for the juvenile file only."

An even greater problem with the majority's argument is that it addresses the wrong issue. The issue here is the court's power to order that the sample be taken, not where the sample should be kept once it is obtained. The Arizona DNA Identification System is merely the repository for the sample acquired pursuant to the DNA testing order. At most, the majority shows that the sample cannot be kept in this system, not that the court cannot order the sample taken. Under its analysis, the juvenile court could order that the sample be taken and keep the information in the court's own files.

The final difficulty with the majority's argument is that I find no lack of authority for the court to direct that the information be kept in a particular place. Having exercised its authority under the juvenile disposition statute to order the sample, the court must arrange for the information to be kept somewhere. Even if the court had ordered that the Arizona DNA Information System be the repository, it would have simply utilized an already available data bank to store the DNA information. I fail to see how placing the sample in a particularly well-suited repository somehow destroys the court's authority to order the sample in the first place.

The court's exercise of its power to order DNA testing also does not conflict with any legislative policy. The apparent purpose of DNA testing of adults is to prevent and solve future crime. Testing of juveniles furthers the same purpose, thereby supporting probation as an alternative to incarceration of the juvenile. By strengthening the viability of

probation, DNA testing furthers the evident purpose of A.R.S. section 8–241(A)(2): affording the juvenile court a wide range of disposition options.

The juvenile court has statutory authority under section 8–241(A)(2)(b) to impose conditions of probation. The court needs no other specific legislative authority to order DNA testing as a condition of probation. The legislature has not indicated in any way that the court cannot impose that condition. Accordingly, I must respectfully dissent from the majority opinion to the contrary.

would be retained. For the sake of simplicity, however, I refer to the DNA "sample."