61 P.3d 34

**In re AARON M.**

**No. 1 CA–JV 02–0029.**

Court of Appeals of Arizona, Division 1, Department C.

Jan. 14, 2003.

Richard M. Romley, Maricopa County Attorney, By Linda Van Brakel, Deputy County Attorney, Phoenix, Attorneys for Appellee.

Jeffrey M. Zurbriggen, P.C., By Jeff Zurbriggen, Tempe, Attorneys for Appellant.

## OPINION

WEISBERG, Judge.

¶ 1 Aaron M. ("Appellant"), a juvenile, was adjudicated delinquent after pleading guilty to attempted burglary in the second degree in violation of Arizona Revised Statutes ("A.R.S.") sections 13–1001 and 13–1507 (2001). At disposition, the court placed Appellant on probation.[1] More than eight months later, Appellant's probation officer requested that the juvenile court hold oral argument to consider whether Appellant should be ordered to submit to deoxyribonucleic acid ("DNA") testing pursuant to A.R.S. § 13–4438 (Supp.2001). Following oral argument, the court ordered Appellant to submit to DNA testing at the direction of the probation department. Appellant timely appeals this order.

## STANDARD OF REVIEW

¶ 2 Issues of statutory construction and interpretation are questions of law that this court reviews de novo. *Ariz. Dep't of Revenue v. Dougherty,* 200 Ariz. 515, 517, ¶ 7, 29 P.3d 862, 864 (2001).

## DISCUSSION

¶ 3 This matter turns on the construction and application of two statutes regarding DNA testing for juvenile offenders: A.R.S. § 13–4438 and A.R.S. § 31–281 (2002).[2] Section 13–4438(C) states:

Within fifteen days after a person is convicted or adjudicated delinquent, a county probation department shall secure a blood sample sufficient for deoxyribonucleic acid testing and extraction from the person if the person is convicted of or adjudicated delinquent for an offense listed in this section or an attempt to commit an offense listed in this section and is sen-

tenced to or placed on a term of probation. The county probation department shall transmit the sample to the department of public safety.

Section 13–4438(I) lists offenders covered by the statute, which during the relevant period included juveniles adjudicated delinquent for an attempted burglary under A.R.S. § 13–1507.

¶ 4 The second DNA testing statute, A.R.S. § 31–281, has two versions in force. The first version, last amended by Laws 2000, Chapters 193 and 373, states in pertinent part:

A. A person who is convicted of or adjudicated delinquent for any offense listed in § 13–4438, subsection I and any person who is accepted under the interstate compact for the supervision of parolees and probationers and who has arrived in this state shall submit to deoxyribonucleic acid testing for law enforcement identification purposes. The department of public safety shall maintain both of the following:

1. Reports of the tests.

2. Blood samples for at least thirty-five years.

A.R.S. § 31–281(A) (internal footnote omitted). The second version, last amended by Laws 2001, Chapter 382, reads in part,

A. A person who is convicted of or adjudicated delinquent for a sexual offense or attempt to commit a sexual offense as provided in § 13–1403, 13–1404, 13–1405, 13–1406, 13–1410, 13–1417 or 13–3608 or who is convicted of or adjudicated delinquent for a violation of § 13–3821, 13–3822, 13–3824, 13–3552, 13–3553 or 13–3554 and any person who is accepted under the interstate compact for the supervision of parolees and probationers and has arrived in this state shall submit to deoxyribonucleic

---

1. The court placed Appellant on standard probation and ordered the following special terms: Juvenile must (1) complete eight hours of community service; (2) participate in any counseling, therapy, treatment, or placement arranged by the probation officer; (3) submit to urinalysis as directed by the probation officer; and (4) present himself for four days of detention in the juvenile detention facility.

2. We note that the Legislature enacted changes following Appellant's adjudication and disposition. Effective August 22, 2002, both versions of § 31–281 were repealed. Additionally, § 13–4438 has been renumbered as § 13–610. Section 13–610(C) remains substantively the same as former § 13–4438(C); however, § 13–610(C) expands the time period during which the probation department is to obtain a sample for DNA testing from fifteen to thirty days.

acid testing for law enforcement identification purposes. The department of public safety shall maintain reports of the tests. A.R.S. § 31–281(A) (internal footnote omitted).

¶ 5 On August 12, 2000, the date Appellant committed the burglary, both versions of the statute were in effect. Appellant is subject to DNA testing under the first version of A.R.S. § 31–281(A), which includes attempted burglary as a qualifying offense, but not the latter version, which lists only sexual offenses. We therefore consider the impact of the first version.

¶ 6 Appellant first argues that A.R.S. § 13–4438 is inapplicable in this case. We disagree. Appellant was adjudicated delinquent for attempted burglary, an offense listed in A.R.S. § 13–4438(I), and was thereafter placed on a term of probation. Appellant therefore meets the statutory criteria for mandatory DNA testing under A.R.S. § 13–4438(C). In addition, Appellant is subject to DNA testing under A.R.S. § 31–281(A). Under this statute, "[a] person who is ... adjudicated delinquent for any offense listed in § 13–4438, subsection I ... shall submit to deoxyribonucleic acid testing for law enforcement purposes." We therefore hold that both DNA testing statutes, A.R.S. § 13–4438 and A.R.S. § 31–281, apply here.

¶ 7 Next, Appellant contends that, even if A.R.S. § 13–4438 does apply, the county probation department's failure to secure a blood sample for DNA testing within the fifteen-day time limit prescribed by A.R.S. § 13–4438(C) discharged him from having to submit to DNA testing. Essentially, Appellant argues that, once the fifteen-day time period has elapsed, the probation department is precluded from thereafter obtaining a DNA sample from a juvenile probationer. In opposition, the State maintains that, although the probation department has an affirmative duty to administer a DNA test, a juvenile probationer has a separate obligation to submit to a DNA test that is not affected by the probation department's fifteen-day directive. With that, we agree.

¶ 8 Generally, "[i]n the absence of ambiguous statutory language or manifest legislative intent to the contrary, courts should look to the plain meaning of the words enacted." *Dougherty*, 200 Ariz. at 518, ¶ 9, 29 P.3d at 865. If an ambiguity or contradiction exists, however, the court may ascertain the legislative intent by looking to the statutory scheme as a whole and the statute's context, subject matter, historical background, effects and consequences. *State v. Wood*, 198 Ariz. 275, 277, ¶ 7, 8 P.3d 1189, 1191 (App.2000). In particular, when construing a criminal statute, the court applies practical, common sense constructions consistent with the legislative intent, rather than hyper-technical ones. *Id.* The court must also be mindful to give effect to each word in a statute to avoid rendering any of its language mere surplusage. *Zaritsky v. Davis*, 198 Ariz. 599, 603, ¶ 11, 12 P.3d 1203, 1207 (App.2000).

¶ 9 Turning first to the express language of the DNA statutes, A.R.S. § 31–281(A) and A.R.S. § 13–4438(C) each imposes a distinct and separate obligation on the juvenile offender or the probation department related to DNA testing. Section 31–281(A) directs: "A *person* who is ... adjudicated delinquent for any offense listed in § 13–4438, subsection I ... *shall submit to deoxyribonucleic acid testing.*" (Emphasis added). Thus, by its terms, A.R.S. § 31–281(A) imposes an unconditional statutory mandate on the juvenile offender to submit to DNA testing after being adjudicated delinquent for a qualifying offense.

¶ 10 Correspondingly, A.R.S. § 13–4438(C) orders: "Within fifteen days after a person is convicted or adjudicated delinquent, a *county probation department shall secure a blood sample* sufficient for deoxyribonucleic acid testing and extraction from the person...." (Emphasis added.) Under this statute, the onus is on the probation department, not the juvenile, to timely comply with the DNA testing protocol. As in A.R.S. § 31–281, the mandate here is unconditional, and is automatically triggered when the juvenile is sentenced to probation. Of course, A.R.S. § 13–4438(C) prescribes a fifteen-day time frame during which the probation department is to obtain a sample for testing, whereas A.R.S. § 31–281(A) is silent regarding any time limi-

tation on the juvenile's obligation to submit to DNA testing. The question then becomes whether the probation department's failure to comply with § 13–4438(C)'s time limitation somehow discharges the juvenile probationer's requirement to submit to DNA testing.

¶ 11 While § 13–4438(C) directs that the probation department must perform its duty within the fifteen day limit, it does not provide for any consequences should the probation department fail to do so. Appellant urges that such failure should result in the probation department being thereafter barred from securing a blood sample, thus relieving him from the DNA testing requirement. But the purpose of A.R.S. § 13–4438 leads this court to conclude otherwise.

¶ 12 Examining A.R.S. § 13–4438 in its entirety, subsections (A) though (H) each designates a specific state agency with the responsibility of obtaining a blood sample from an adult or juvenile offender who is subject to mandatory DNA testing. The statute then goes on to describe the department of public safety's role in analyzing the samples and cataloguing the DNA test results. A.R.S. § 13–4438(H). In this context, the time limitations serve an important role in ensuring that the specified state agency initiates the DNA testing process, rather than relying on the offender to present himself for testing. However, there is no indication from the context of A.R.S. § 13–4438 that the legislature adopted the time periods to protect an offender from having to comply with the testing requirement. To the contrary, the time limits seem geared to guarantee that a blood sample for DNA testing be promptly secured while the offender is still under the jurisdiction of a state agency.

¶ 13 Further, the legislative intent underlying the DNA testing statutes supports our interpretation of the time provisions. As this court has previously recognized, A.R.S. §§ 13–4438 and 31–281 serve a dual purpose. *See Maricopa County Juv. Action Nos. JV–512600 & JV–512797*, 187 Ariz. 419, 422–23, 930 P.2d 496, 499–500 (App.1996); *Maricopa County Juv. Action No. JV–508801*, 183 Ariz. 175, 177, 901 P.2d 1205, 1207 (App.1995). First, mandating DNA testing aids in the rehabilitation of offenders by deterring their involvement in future crime. *JV–508801*, 183 Ariz. at 177, 901 P.2d at 1207. Second, DNA testing assists law enforcement investigations by providing a DNA data bank that can be used to identify repeat offenders. *Id.* Obviously, construing the statutes to allow a juvenile offender to use the time limits prescribed in A.R.S. § 13–4438(C) to evade DNA testing would be antithetical to these legislative objectives.

¶ 14 We therefore conclude that the probation department's failure to secure a blood sample for DNA testing within the fifteen day period prescribed by A.R.S. § 13–4438(C) does not relieve Appellant from his obligation to comply with the mandatory DNA testing requirement of A.R.S. § 31–281(A).

## CONCLUSION

¶ 15 For the foregoing reasons, we affirm the juvenile court order requiring Appellant to submit to DNA testing.

CONCURRING: JEFFERSON L. LANKFORD, Presiding Judge, and PATRICK IRVINE, Judge.