99 P.3d 578

**In re LEOPOLDO L.**

**No. 1 CA–JV 04–0074.**

Court of Appeals of Arizona,
Division 1, Department E.

Oct. 21, 2004.

Terry Goddard, Attorney General By Randall M. Howe, Chief Counsel, Criminal Appeals Section and Richard M. Romley, Maricopa County Attorney By Linda Van Brakel, Deputy County Attorney, Phoenix, Attorneys for Appellee.

James J. Haas, Maricopa County Public Defender By Suzanne Sanchez, Deputy Public Defender, Mesa, Attorneys for Appellant.

**OPINION**

TIMMER, Judge.

¶ 1 Leopoldo L. appeals the juvenile court's disposition order that he submit to deoxyribonucleic acid ("DNA") testing. He argues that the court erred in entering this order because (1) Arizona Revised Statutes ("A.R.S.") section 13–610(O)(1) (Supp.2003),

which authorizes DNA testing of juveniles adjudicated delinquent for sexual offenses, is inapplicable to adjudications for attempted sexual offenses, and (2) the involuntary taking of a DNA sample under § 13–610 is an unreasonable search that violates his federal and state constitutional rights to privacy. For the reasons that follow, we disagree and therefore affirm.

## BACKGROUND

¶ 2 On September 5, 2003, the State charged Leopoldo with sexual abuse, a class 3 felony, for inappropriately touching a schoolmate. On March 11, 2004, Leopoldo admitted to committing attempted public indecency to a minor, a class 6 undesignated felony, in violation of A.R.S. §§ 13–1001 and 1403(B). On April 21, the juvenile court adjudicated Leopoldo delinquent of the admitted charge, placed him on probation, and ordered that he submit to DNA testing. Leopoldo objected to the DNA test on the grounds that the requisite statute requiring testing did not apply to attempted sexual offenses, and that the ordered test violated his constitutional rights to privacy. The court rejected these arguments, and this timely appeal followed.

## DISCUSSION

### A. Applicability of A.R.S. § 13–610(O)(1)

¶ 3 Leopoldo argues that the juvenile court erred by ordering him to submit to DNA testing because A.R.S. § 13–610, which mandates DNA testing in certain circumstances, does not apply to juveniles adjudicated delinquent of attempted sexual offenses. We review issues of statutory construction de novo. *Ariz. Dep't of Revenue v. Dougherty,* 200 Ariz. 515, 517, ¶ 7, 29 P.3d 862, 864 (2001).

¶ 4 Section 13–610(C), A.R.S., provides that within thirty days after a juvenile is adjudicated delinquent for specified offenses and placed on probation, "the county probation department shall secure a sufficient sample of blood or other bodily substances" from the juvenile for DNA testing. Results of the DNA test are then maintained in a database

for law enforcement identification purposes, and for use in criminal prosecutions, juvenile adjudications, and proceedings relating to sexually violent persons. A.R.S. § 13–610(H), (I). Significantly, for purposes of this appeal, subsection O provides in part that § 13–610 applies to persons adjudicated delinquent for the following offenses:

1. A violation or an ***attempt*** to violate any offense in chapter 11 of this title, any felony offense in chapter 14 or 35.1 of this title or § 13–1507, 13–1508 or 13–3608.

(emphasis added). Leopoldo contends that the word "attempt" only applies to homicide offenses listed in chapter 11 and does not apply to the remaining offenses listed within § 13–610(O)(1). Because the court adjudicated him delinquent for attempting to commit a chapter 14 felony offense, Leopoldo asserts that the court erred by requiring him to submit to DNA testing. The State counters that the court correctly ordered DNA testing because § 13–610(O)(1) requires such testing when a juvenile is adjudicated for attempting to commit any of the offenses listed in that provision.

¶ 5 To determine the legislature's intent in enacting A.R.S. § 13–610(O)(1), we look first to the language of the provision, *Calmat of Ariz. v. State ex rel. Miller,* 176 Ariz. 190, 193, 859 P.2d 1323, 1326 (1993), and will ascribe plain meaning to its terms unless they are ambiguous. *Rineer v. Leonardo,* 194 Ariz. 45, 46, ¶ 7, 977 P.2d 767, 768 (1999). Because it is possible to read § 13–610(O)(1) in the manner advocated by either party, we employ other principles of statutory interpretation to glean the legislature's intent. *See State v. Riggs,* 189 Ariz. 327, 333, 942 P.2d 1159, 1165 (1997).

¶ 6 First, we can discern the legislature's intent in enacting § 13–610(O)(1) by examining the development of that provision. *Haas v. Colosi,* 202 Ariz. 56, 58, ¶ 6, 40 P.3d 1249, 1251 (App.2002). In 1993, the legislature enacted A.R.S. § 13–4438, which the legislature renumbered in 2002 as § 13–610. Laws 1993, Ch. 235, § 1. Prior to 1998, § 13–4438 provided, in relevant part, that DNA testing was required when a person is "convicted or adjudicated delinquent of [an enumerated] sexual offense." A.R.S. § 13–4438(C) (Supp.

1996). The statute did not mention convictions or adjudications for attempted offenses.

¶ 7 In 1997, this court issued *In re Sean M.*, 189 Ariz. 323, 942 P.2d 482 (App.1997), which addressed whether DNA testing was required for juveniles adjudicated delinquent for attempted sexual offenses. The juvenile in that case argued that because the plain language of § 13–4438(C) did not require testing following adjudications for attempted sexual offenses, the juvenile court erred by ordering such testing. *Sean M.*, 189 Ariz. at 324–25, 942 P.2d at 483–84. We rejected this argument, reasoning that no distinction exists between attempted and completed sexual offenses sufficient to require DNA testing only if a juvenile is adjudicated delinquent for the completed offense. *Id.* at 325, 942 P.2d at 484. Thus, giving § 13–4438 its fair meaning and taking into account the statute's underlying policies, we held that the provision applies if a juvenile is adjudicated delinquent for attempting to commit any of the listed sexual offenses. *Id.* at 326, 942 P.2d at 485; *see also State v. Lammie*, 164 Ariz. 377, 380–81, 793 P.2d 134, 137–38 (App.1990) (holding sex offender registration provision applied to persons convicted of attempted as well as completed sexual offenses even though provision made no reference to attempted offenses).

¶ 8 In 1998, possibly in response to *Sean M.*, the legislature amended § 13–4438 and specifically provided that DNA testing is required when a person is convicted of or adjudicated delinquent for "an attempt to commit a sexual offense." 1998 Ariz Sess. Laws, Ch. 291, § 6. This requirement continued through subsequent amendments to § 13–4438, and prior to the 2002 amendment the statute provided, in pertinent part, as follows:

I. This section applies to persons who are convicted of or adjudicated delinquent for the following offenses:

1. A violation of or an attempt to violate [various offenses listed in chapters 14, 36, and 38].

2. Beginning on January 1, 2001, a violation of or an attempt to violate title 13, chapter 11, § 13–1507 or § 13–1508.

2001 Ariz. Sess. Laws, Ch. 382, § 4.

¶ 9 In 2002, the legislature rewrote § 13–4438 and renumbered it as § 13–610. 2002

Ariz. Sess. Laws, Ch. 226, § 2. Significantly, for purposes of this appeal, the legislature wrote subsection (O)(1) to include the offenses previously listed separately in § 13–4438(I)(1) and (2), as well as additional offenses. *See supra* ¶ 4. We see no indication from our review of the amendment or the hearings held on the Senate bill that eventually culminated in the amendment that the legislature intended to restrict mandated DNA testing for attempted offenses to attempted homicides. Indeed, as reflected in Senate hearing testimony, one purpose of the amendment was to *expand* the list of crimes for which a person, when convicted or adjudicated delinquent, must submit to DNA testing. *See DNA testing identification database: Hearings on S.B. 1396 Before the Comm. on Appropriations*, 44th Leg., 2nd Reg. Sess. (April 16, 2002) (testimony of Joy Hicks, Majority Research Analyst). Moreover, in light of the holding in *Sean M.* and the prior amendment to § 13–4438 to clearly apply that provision to attempted sexual offenses, we would expect the legislature to have explicitly stated that § 13–610 no longer applies to attempted sexual offenses if that was the legislature's intention. Because the legislature did not do so, and in light of the legislative development of § 13–610(O)(1), the correct interpretation is that the legislature intended that provision to apply to attempts to commit any of the listed offenses.

¶ 10 Second, we must interpret § 13–610(O)(1) in light of subsection (O)(2). *See Goulder v. Ariz. Dep't of Transp., Motor Vehicle Div.*, 177 Ariz. 414, 416, 868 P.2d 997, 999 (App.1993)("Statutes relating to the same subject matter should be read *in pari materia* to determine legislative intent and to maintain harmony."). Subsection (O)(2) provides that § 13–610 is applicable to juveniles adjudicated delinquent for any offense for which a person is required to register as a sex offender pursuant to A.R.S. § 13–3821. Pursuant to § 13–3821(A), a person must register if convicted of committing or attempting to commit any of an enumerated list of offenses, including those listed within A.R.S. title 13, chapter 14. Thus, if Leopoldo's contention is correct, an attempt to com-

mit a felony offense listed in chapter 14 and subject to § 13–3821 would be treated differently under § 13–610(O)(1) and (2). The interpretation that sensibly harmonizes these provisions is the one that interprets subsection (O)(1) as requiring DNA testing of a juvenile adjudicated delinquent for attempting to commit a felony sexual offense. *See Phoenix v. Superior Court*, 139 Ariz. 175, 178, 677 P.2d 1283, 1286 (1984) (noting court should interpret statute so as to give it a fair and sensible meaning).

¶ 11 In sum, we hold that A.R.S. § 13–610(O)(1) mandates DNA testing of a juvenile adjudicated delinquent for attempting to commit any offense listed in that subsection, including a felony sexual offense listed in chapter 14. Because the court adjudicated Leopoldo delinquent for violating A.R.S. §§ 13–1001 and –1403(B), it properly ordered him to submit to DNA testing.

### B.   Reasonableness of search

¶ 12 Leopoldo also argues that A.R.S. § 13–610 is unconstitutional as applied to him because the involuntary taking of a DNA sample for use in detecting crimes for which he is not suspected is an unreasonable search that impermissibly intrudes on his rights to privacy under the Fourth Amendment to the United States Constitution and article 2, section 8 of the Arizona Constitution.[1] We review the constitutionality of statutes de novo. *Grammatico v. Indus. Com'n*, 208 Ariz. 10, 12, ¶ 6, 90 P.3d 211, 213 (App.2004).

¶ 13 Unquestionably, the extraction of blood for DNA testing is a "search" for purposes of the Fourth Amendment. *Schmerber v. State of California*, 384 U.S. 757, 767–68, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). A search undertaken in the absence of an individualized suspicion of wrongdoing is generally unreasonable and impermissible under the Fourth Amendment. *City of Indianapolis v. Edmond*, 531 U.S. 32, 37, 121 S.Ct. 447, 148 L.Ed.2d 333 (2000). However, suspicionless searches have been upheld in limited circumstances. *Id.; see also Nat'l Treasury Employees Union v. Von Raab*, 489 U.S. 656, 665, 109 S.Ct. 1384, 103 L.Ed.2d 685 (1989) (holding that "neither a warrant nor probable cause, nor, indeed, any measure of individualized suspicion, is an indispensable component of reasonableness in every circumstance").

¶ 14 In *Maricopa County Juvenile Action Nos. JV–512600 and JV–512797*, 187 Ariz. 419, 930 P.2d 496 (App.1997), this court rejected the argument now advanced by Leopoldo. We reasoned that compelled DNA testing of juveniles adjudicated delinquent for committing sexual offenses is not an unreasonable search because the procedural safeguards required by A.R.S. § 13–4438 (now § 13–610) and a companion statute, A.R.S. § 31–281 (repealed), are more stringent than those required for issuance of a search warrant based on a probable cause finding. 187 Ariz. at 423, 930 P.2d at 500. Additionally, the court employed the traditional totality-of-the-circumstances test, which balanced the invasion of a juvenile's privacy rights against the State's interest in conducting the search, to conclude that such searches are not unreasonable under the Fourth Amendment. *Id.* at 423–24, 930 P.2d at 500–01; *see United States v. Kincade*, 379 F.3d 813, 827, 831 (9th Cir.2004)(en banc). Specifically, the court concluded that a juvenile's privacy rights are not violated because the intrusion is minimal, the expectation of privacy is diminished for those who commit sexual offenses, and the public's interest in

---

1.   The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

  Article 2, section 8 of the Arizona Constitution similarly states that "[n]o person shall be disturbed in his private affairs, or his home invaded, without authority of law."

Although article 2, section 8 may impose stricter standards on searches and seizures than the Fourth Amendment, *Petersen v. City of Mesa*, 207 Ariz. 35, 37, ¶ 8 n. 3, 83 P.3d 35, 43 n. 3 (2004), *cert. denied*, —— U.S. ——, 125 S.Ct. 51, —— L.Ed.2d —— (2004), Leopoldo only cites Fourth Amendment authority to support his position and does not argue that any different analysis should apply under the Arizona Constitution. Therefore, we confine our analysis to Fourth Amendment principles to resolve Leopoldo's argument.

effective law enforcement, crime prevention, and the identification and apprehension of those who commit sexual offenses outweighs any intrusion on a juvenile's privacy. *JV–512600*, 187 Ariz. at 424, 930 P.2d at 501.

¶ 15 Leopoldo acknowledges the holding in *JV–512600* but challenges its ongoing viability in light of cases subsequently decided by the United States Supreme Court and the Arizona Supreme Court relating to the "special-needs exception" to generally prohibited suspicionless searches. The special-needs exception applies to government programs "designed to serve special needs, beyond the normal need for law enforcement." *Edmond*, 531 U.S. at 37, 121 S.Ct. 447 (citation omitted); *Ferguson v. City of Charleston*, 532 U.S. 67, 76 n. 7, 121 S.Ct. 1281, 149 L.Ed.2d 205 (2000) (citation omitted) (noting exception applies only " 'in those exceptional circumstances in which special needs, beyond the normal need for law enforcement, make the warrant and probable-cause requirement impracticable.' "). If such special needs outweigh the intrusion on a person's privacy rights, the contested search is reasonable and does not violate the Fourth Amendment. *Skinner v. Ry. Labor Executives' Assn.*, 489 U.S. 602, 619, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989) ("When faced with such special needs, we have not hesitated to balance the governmental and privacy interests to assess the practicality of the warrant and probable-cause requirements in the particular context."); *Nat'l Treasury Employees Union v. Von Raab*, 489 U.S. 656, 665–66, 109 S.Ct. 1384, 103 L.Ed.2d 685 (1989) ("[W]here a Fourth Amendment intrusion serves special governmental needs, beyond the normal need for law enforcement, it is necessary to balance the individual's privacy expectations against the Government's interests to determine whether it is impractical to require a warrant or some level of individualized suspicion in the particular context.").

¶ 16 Since the Supreme Court first adopted the special-needs exception in *Griffin v. Wisconsin*, 483 U.S. 868, 873, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987) to uphold a suspicionless search of a probationer's home, it has applied the exception to approve highway sobriety checkpoints aimed at reducing the immediate hazard posed by drunk drivers, *Michigan Dept. of State Police v. Sitz*, 496 U.S. 444, 451, 110 S.Ct. 2481, 110 L.Ed.2d 412 (1990), and to allow suspicionless drug testing of specified groups of people, *Bd. of Educ. of Indep. School Dist. No. 92 of Pottawatomie County v. Earls*, 536 U.S. 822, 838, 122 S.Ct. 2559, 153 L.Ed.2d 735 (2002) (high school participants in school-sponsored extracurricular activities); *Vernonia School Dist. 47J v. Acton*, 515 U.S. 646, 665, 115 S.Ct. 2386, 132 L.Ed.2d 564 (1995)(high school student-athletes); *Skinner*, 489 U.S. at 633, 109 S.Ct. 1402 (railway employees involved in train accidents); *Von Raab*, 489 U.S. at 679, 109 S.Ct. 1384 (United States Customs Service employees seeking promotion to sensitive positions). The Court has rejected an argument that mandatory drug testing for political candidates fits within the special-needs exception. *Chandler v. Miller*, 520 U.S. 305, 322, 117 S.Ct. 1295, 137 L.Ed.2d 513 (1997).

¶ 17 Leopoldo argues that three special-needs-exception cases decided since *JV–512600* effectively overruled that decision. First, in *Edmond*, 531 U.S. at 48, 121 S.Ct. 447, the Court held that the City of Indianapolis' practice of conducting vehicle checkpoints in an effort to interdict unlawful drugs did not fall within the special needs exception. Because Indianapolis' primary purpose for its checkpoints was "to advance 'the general interest in crime control,' " the Court held that such stops can only be justified by some quantum of individualized suspicion. 531 U.S. at 44, 121 S.Ct. 447. The Court therefore held the program unconstitutional, declaring that it "[could not] sanction stops justified only by the generalized and ever-present possibility that interrogation and inspection may reveal that any given motorist has committed some crime." *Id.* at 44, 121 S.Ct. 447.

¶ 18 Next, in *Ferguson*, 532 U.S. at 84, 121 S.Ct. 1281, the Court decided that a state hospital's practice of testing pregnant women for cocaine use and then reporting positive results to law enforcement officers did not come within the special-needs exception. The Court reasoned that the hospital's practice was "ultimately indistinguishable from

the general interest in crime control," and thus not a "special need" subject to the balancing test. 532 U.S. at 81, 121 S.Ct. 1281 (citing *Edmond,* 531 U.S. at 44, 121 S.Ct. 447).

¶ 19 Finally, in *Petersen v. City of Mesa,* 207 Ariz. 35, 38 ¶ 9, 83 P.3d 35, 38 (2004), *cert. denied,* —— U.S. ——, 125 S.Ct. 51, —— L.Ed.2d —— (2004), the Arizona Supreme Court addressed the constitutionality of the City of Mesa's program of randomly testing city firefighters for illegal drug and alcohol use. Applying the special-needs exception to the evidence before it, the court concluded that the city's program did not constitute a "special need." *Id.* at 41, ¶ 24, 83 P.3d at 41. Nevertheless, the court balanced the city's interest in deterring prohibited alcohol and illegal drug use among its firefighters against those firefighters' privacy interests to conclude that the searches fell "outside the 'closely guarded category of constitutionally permissible suspicionless searches.' " *Id.* at 43 ¶ 33, 83 P.3d at 43 (quoting *Chandler,* 520 U.S. at 309, 117 S.Ct. 1295).

¶ 20 Leopoldo argues that because the primary purpose of A.R.S. § 13–610 is general law enforcement, *Edmond, Ferguson,* and *Petersen* effectively overruled *JV–512600* and mandate a conclusion that the special-needs exception does not justify warrantless DNA testing. Although Leopoldo does not explicitly argue that this court must employ the special needs analytical framework to assess the constitutionality of A.R.S. § 13–610 rather than the totality approach used in *JV– 512600,* he necessarily advances this argument by urging the applicability of special needs jurisprudence. Since the Supreme Court's decisions in *Edmond* and *Ferguson,* courts outside Arizona have grappled with identifying the correct analysis to use in deciding whether mandatory DNA testing of certain adult and juvenile offenders violates the Fourth Amendment.[2] We need not resolve that dispute in this case. Even assuming that the special needs analytical framework has supplanted the totality approach, we conclude that Arizona's DNA testing program is not an unreasonable search under the Fourth Amendment.

¶ 21 Ordering DNA testing of juveniles adjudicated delinquent of sexual offenses is not the type of generalized crime control method that prevented the programs at issue in *Edmond, Ferguson,* and *Petersen* from falling within the special-needs exception. Unlike the programs in those cases, the primary purpose of A.R.S. § 13–610 is not to detect whether a crime has been committed. Indeed, DNA testing, unlike vehicle searches and drug tests, would not reveal such information. Rather, a primary purpose of DNA testing is to identify a particular class of persons who have committed or may commit crimes and place that identity information into a database. *In re Aaron M.,* 204 Ariz. 152, 155, ¶ 13, 61 P.3d 34, 37 (App.2003); A.R.S. §§ 13–610(H), –41–2418. As such, the tests are akin to taking fingerprints of suspects, which may be used to identify perpetrators of past and future crimes or to exonerate innocent persons. *See Jones v. Murray,* 962 F.2d 302, 306–07 (4th Cir.1992) (concluding DNA test of suspect's blood tantamount to fingerprinting and does not require individualized suspicion before test can be undertaken); *see also Green v. Berge,* 354 F.3d 675, 678 (7th Cir.2004) (rejecting challenge to DNA collection program under *Edmond* and *Ferguson* in part because program not undertaken for investigation of specific crime but to obtain reliable proof of felons' identity); *Vore v. U.S. Dept. of Justice,* 281 F.Supp.2d 1129, 1135–36 (D.Ariz. 2003) (holding federal DNA testing of qualifying felons within special-needs exception and distinguishable from programs challenged in *Edmond* and *Ferguson* because former seeks to identify rather than discover and punish a particular person's wrongdoing).

**2.** For excellent discussions on the development of the special-needs exception, its relationship to the traditional totality balancing test, and the impact of *Edmond* and *Ferguson* on the choice of analytical framework to employ when assessing the reasonableness of searches conducted pursuant to DNA testing programs, *see Kincade,* 379 F.3d at 822–32 (concluding totality approach appropriate) and *Nicholas v. Goord,* 2003 WL 256774, at *4–11 (S.D.N.Y.2003) (concluding special needs approach appropriate).

¶ 22 Another purpose of § 13–610 is to deter a class of persons who have committed enumerated offenses from re-offending. *Aaron M.*, 204 Ariz. at 155, ¶ 13, 61 P.3d at 37. This deterrence objective additionally distinguishes § 13–610 from the programs at issue in *Edmond, Ferguson,* and *Petersen.* Unlike the persons subject to search in those cases, the persons subject to DNA testing have been either convicted of or adjudicated delinquent for offenses that threaten the public safety. Thus, there is a special need to deter this class of persons from re-offending, which serves a government need distinct from the generalized and unfocused need for law enforcement. *State v. Surge,* 122 Wash. App. 448, 94 P.3d 345, 351 (2004) ("Establishment of a DNA database for the purposes of identifying incarcerated felons and deterring recidivism appears to fall within the 'special need' exception and is not primarily for the normal law enforcement purpose of prosecuting current crimes.").

¶ 23 In sum, the DNA testing required by § 13–610 serves the government's special needs to identify perpetrators of past and future crimes and to deter a known class of offenders from re-offending. Because the primary purpose of this statute is not simply the advancement of a generalized interest in law enforcement without individualized suspicion, *Edmond, Ferguson,* and *Petersen* do not call into question the reasonableness of Arizona's DNA collection program under the Fourth Amendment, and these cases did not effectively overrule *JV–512600.* Leopoldo does not contend that Arizona's interests in compelling DNA testing are outweighed by the privacy rights of tested juveniles. Thus, we need not revisit our holding in *JV–512600* that the government's interests outweigh such privacy interests except to note our continuing agreement with it.

¶ 24 Finally, although not determinative, we note that our decision today is consistent with those reached by the vast majority of other courts that have addressed this issue under either the special-needs exception or the totality of the circumstances balancing test. *See Kincade,* 379 F.3d at 830–32 (collecting cases); *Nicholas,* 2003 WL 256774 at *7–9 (collecting cases).

## CONCLUSION

¶ 25 For the foregoing reasons, we hold that A.R.S. § 13–610(O)(1) applies to adjudications for attempted sexual offenses. We additionally decide that the juvenile court's order that Leopoldo submit to DNA testing did not violate his federal and state constitutional rights to privacy. Discerning no error, we affirm.

CONCURRING: PHILIP HALL, Presiding Judge and DONN KESSLER, Judge.