COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-02-163-CV
IN THE MATTER OF D.L.C.                                                     APPELLANT 
AND
NO. 2-02-164-CV
IN THE MATTER OF D.L.G.                                                     APPELLANT 
AND
NO. 2-02-170-CV
IN THE MATTER OF R.W.W.                                                   APPELLANT 
AND
NOS. 2-02-171-CV
 2-02-172-CV
 
IN THE MATTER OF C.S.P.                                                     APPELLANT 
----------
FROM COUNTY COURT AT LAW NO. 1 OF DENTON COUNTY
----------
OPINION
------------
I. Introduction
        This is a consolidated appeal involving issues of first impression in Texas. 
The five consolidated cases involve juvenile probation conditions that were 
amended to require Appellants D.L.C., D.L.G., C.S.P., and R.W.W. (collectively 
“Appellants”) to submit blood samples or other specimens for the purpose of 
creating a DNA record. See Tex. Fam. Code Ann. § 54.0405(a)(2), (b) (Vernon 
2002). In four issues, Appellants contend that: (1) requiring them to submit 
a DNA sample is unconstitutional based on ex post facto and double jeopardy 
protections; (2) requiring them to submit a DNA sample is unconstitutional 
based on the protections against unlawful search and seizure; (3) requiring them 
to submit a DNA sample violates Appellants’ rights against self-incrimination; 
and (4) the evidence was legally and factually insufficient to support the trial 
court’s finding that they should be subject to the DNA statute. We will affirm. 
II. Factual and Procedural Background
        The factual and procedural background in each of the five consolidated 
cases is similar. At the adjudication hearings conducted in accordance with 
Texas Family Code section 54.03, each Appellant pleaded guilty to either 
indecency with a child or aggravated sexual assault of a child, or both. Id. § 
54.03 (Vernon Supp. 2004). Subsequently, the trial court conducted 
disposition hearings, and each Appellant was placed on probation and was 
required to register in the sex offender registration program. See id. § 54.04; 
Tex. Code Crim. Proc. Ann. ch. 62 (Vernon Supp. 2004). 
        After Appellants were placed on probation, the Legislature passed section 
54.0405 of the Texas Family Code. Tex. Fam. Code Ann. § 54.0405. That 
section requires a child who must register as a sex offender to also submit, as 
a condition of probation, a blood sample or other specimen for the purpose of 
creating a DNA record. Id. Based on the new legislation, the State sought to 
amend the terms and conditions of Appellants’ probation to require them to 
submit a DNA sample for inclusion in the DNA databank. Following contested 
hearings, the court granted the State’s motions to amend and ordered 
Appellants to submit a blood sample or other specimen for the purpose of 
creating a DNA record. 



        After being ordered to submit a blood sample, R.W.W. filed a motion to 
excuse further sex offender registration. See Tex. Code Crim. Proc. Ann. art. 
62.13(l). The trial court granted R.W.W.’s motion to excuse further sex 
offender registration, and R.W.W. then filed a motion to rescind the DNA order. 
The trial court refused to rescind R.W.W.’s DNA order. 
 
 
III. Standard of Review for Constitutional Issues 
        If possible, we interpret a statute in a manner that renders it 
constitutional. FM Props. Operating Co. v. City of Austin, 22 S.W.3d 868, 873 
(Tex. 2000); Quick v. City of Austin, 7 S.W.3d 109, 115 (Tex. 1998). A party 
raising a facial challenge to the constitutionality of a statute must demonstrate 
that the statute always operates unconstitutionally. Wilson v. Andrews, 10 
S.W.3d 663, 670 (Tex. 1999). In other words, a challenger must establish that 
no set of circumstances exists under which the statute would be valid. Id. In 
reviewing a facial challenge to a statute's constitutionality, we consider the 
statute as written, rather than as it operates in practice. See Barshop v. 
Medina County Underground Water Conservation Dist., 925 S.W.2d 618, 626-27 (Tex. 1996). 
        However, an “as applied challenge” only requires the challenger to 
demonstrate that the statute operates unconstitutionally when applied to the 
challenger's particular circumstances. In re B.S.W., 87 S.W.3d 766, 771 (Tex. 
App.—Texarkana 2002, pet. denied). When reviewing the constitutionality of 
a statute as applied, we presume the statute is valid and that the Legislature 
has not acted unreasonably or arbitrarily in enacting it. Ex parte Granviel, 561 
S.W.2d 503, 511 (Tex. Crim. App. 1978); Sisk v. State, 74 S.W.3d 893, 901 
(Tex. App.—Fort Worth 2002, no pet.). It is the challenger’s burden to show 
that the statute is unconstitutional. Ex parte Anderson, 902 S.W.2d 695, 698 
(Tex. App.—Austin 1995, pet. ref’d). 
IV. DNA Statute Does Not Violate Ex Post Facto 
or Double Jeopardy Clauses

        Appellants contend in their first issue that the DNA statute, as applied to 
them, unconstitutionally violates the ex post facto and double jeopardy 
protections of the United States and Texas Constitutions. Specifically, 
Appellants argue that the DNA statute’s retroactive application to them is 
unconstitutional because the statute was not enacted until after they had 
committed their offenses and had accepted agreed dispositions. And, they 
argue that the statute is punitive on its face, as well as punitive in purpose and 
effect. The State responds that the DNA statute violates neither ex post facto 
nor double jeopardy protections because neither the purpose nor the effect of 
the statute is punitive. 
        A. The DNA Statute 
        Texas Family Code section 54.0405 (“the DNA statute”) provides: 
(a) If a court or jury makes a disposition under Section 54.04
in which a child described by Subsection (b) is placed on probation,
the court:
 
. . . . 

                (2) shall require as a condition of probation that the child: 
 
(A) register under Chapter 62, Code of Criminal 
Procedure; and 
 
(B) submit a blood sample or other specimen to the 
Department of Public Safety under Subchapter G, Chapter 
411, Government Code, for the purpose of creating a DNA 
record of the child, unless the child has already submitted the 
required specimen under other state law. 
 
(b) This section applies to a child placed on probation for 
conduct constituting an offense for which the child is required to 
register as a sex offender under Chapter 62, Code of Criminal 
Procedure.

Tex. Fam. Code Ann. § 54.0405(a)(2), (b). The Legislature made the change 
in law applicable to an offense committed before, on, or after the effective date 
of the statute—September 1, 2001. Act of May 8, 2001, 77th Leg., R.S., ch. 
211, §§ 18(a), 23, 2001 Tex. Gen. Laws 399, 405. 
        B. Ex Post Facto Analysis 
        The U.S. Constitution provides that “No . . . ex post facto Law shall be 
passed” by Congress. U.S. Const. art. I, § 9, cl. 3. 


 The Ex Post Facto Clause 
prohibits two types of laws that purportedly are at issue in this case: (1) a law 
that criminalizes an action done before the passing of the law; and (2) a law 
that inflicts greater punishment for a crime than was possible when the crime 
was committed. Rogers v. Tennessee, 532 U.S. 451, 456, 121 S. Ct. 1693, 
1697 (2001); Carmell v. Texas, 529 U.S. 513, 521-25, 120 S. Ct. 1620, 
1626-28 (2000); United States v. Reynard, 220 F. Supp. 2d 1142, 1157 (S.D. 
Cal. 2002); Rodriguez v. State, 93 S.W.3d 60, 66 (Tex. Crim. App. 2002).        Appellants argue that the DNA statute, as applied to them, violates the 
first ex post facto prohibition because it “became effective after the date of 
their offenses and after they had accepted agreed adjudications and dispositions 
in their cases.” While Appellants’ position is procedurally accurate, the DNA 
statute does not retroactively criminalize acts performed by Appellants before 
the DNA statute was passed. Appellants were adjudicated delinquent based on 
qualifying sex offenses. These offenses constituted criminal acts before the 
DNA statute was passed. The DNA statute does not retroactively alter the 
definition of a particular criminal act. See Reynard, 220 F. Supp. 2d at 1158. 
To the contrary, under the statute, DNA material is extracted after adjudication 
and has no effect on the underlying offense or punishment. See Tex. Fam. 
Code Ann. § 54.0405. Thus, the DNA statute does not criminalize an act that 
occurred prior to enactment of the statute. See In re Appeal in Maricopa 
County Juvenile Action Nos. JV-512600 and JV-512797, 930 P.2d 496, 499 
(Ariz. Ct. App. 1996). 
        Appellants also contend that the retroactive application of the DNA 
statute violates the Ex Post Facto Clause because the statute is punitive on its 
face, or in the alternative, it is punitive in its purpose and effect. The State, on 
the other hand, contends that the statute is not penal in nature. No Texas 
court has addressed whether the DNA statute constitutes retroactive 
punishment forbidden by the Ex Post Facto Clause. 


 The framework for our ex 
post facto analysis is, however, well established. See Smith v. Doe, 538 U.S. 
84, 123 S. Ct. 1140, 1146 (2003) (holding Alaska’s retroactive sex offender 
registration statute not violative of the Ex Post Facto Clause); Rodriguez, 93 
S.W.3d at 67-68 (holding Texas’s retroactive amendments to sex offender 
registration statute not violative of the Ex Post Facto Clause). Under the 
required analysis, we must ascertain whether by enacting the statute the 
Legislature meant the statute to establish “civil” proceedings. Smith, 123 S. 
Ct. at 1146-47 (quoting Kansas v. Hendricks, 521 U.S. 346, 361, 117 S. Ct. 
2072, 2082 (1997)). If the Legislature manifested an expressly punitive intent, 
the inquiry is at an end and the statute is a violation of the Ex Post Facto 
Clause. Smith, 123 S. Ct. at 1147; Rodriguez, 93 S.W.3d at 67. If, however, 
the Legislature intended to enact a civil, nonpunitive regulatory scheme, then 
we must further examine whether the statutory scheme is nonetheless “‘so 
punitive either in purpose or effect as to negate [the State’s] intention’ to deem 
it ‘civil.’” Smith, 123 S. Ct. at 1147. We defer to the Legislature’s stated 
intent, so only the clearest proof will suffice to override legislative intent and 
transform what has been legislatively denominated a civil remedy into a criminal 
penalty. Id.; Rodriguez, 93 S.W.3d at 67. 
        Appellants argue that the DNA statute is punitive because the Legislature 
placed it in the “dispositional, or punishment, portions” of the Juvenile Justice 
Code. However, the location and labels of a statutory provision do not by 
themselves transform a civil remedy into a criminal one. 


 Smith, 123 S. Ct. at 
1148. Moreover, Appellants’ argument contradicts the legislatively stated 
purpose of the DNA statute: 
(a) The principal purpose of the DNA database is to assist federal,
state, or local criminal justice or law enforcement agencies in the
investigation or prosecution of sex-related offenses or other
offenses in which biological evidence is recovered.
 
(b) In criminal cases, the purposes of the DNA database are only for 
use in the investigation of an offense, the exclusion or identification 
of suspects, and the prosecution of the case. 
 
(c) Other purpose of the database include: 
 
(1) assisting in the recovery or identification of human 
remains from a disaster or for humanitarian purposes; 
 
(2) assisting in the identification of living or deceased missing 
persons; and 
 
(3) if personal identifying information is removed: 
 
(A) establishing a population statistics database; 
 
(B) assisting in identification research and protocol 
development; and 
 
(C) assisting in database or DNA laboratory quality 
control.

Tex. Gov’t Code Ann. § 411.143(a)-(c) (Vernon 1998). The Legislature’s 
express, primary intent in creating a DNA record, as set forth above, is for 
identification purposes in past and future sex offenses, not to further punish a 
person for the offense at hand. 
        Next, we address whether, despite the intended civil, regulatory nature 
of the DNA statute, it is nonetheless so punitive in effect that this punitive 
effect overrides the Legislature’s nonpunitive intent. Smith, 123 S. Ct. at 
1147. In making this determination, we apply the seven nonexclusive factors 
set forth by the Supreme Court in Kennedy v. Mendoza-Martinez, 372 U.S. 
144, 168-69, 83 S. Ct. 554, 567-68 (1963): (1) whether the DNA statute 
imposes an affirmative disability on qualifying offenders; (2) whether collection 
of blood has historically been regarded as punishment; (3) whether the DNA 
statute’s provisions are effective only upon a finding of scienter; (4) whether 
operation of the DNA statute will promote the traditional aims of 
punishment—i.e., retribution and deterrence; (5) whether the DNA statute 
regulates behavior that is already a crime; (6) whether the DNA statute serves 
some nonpunitive purpose; and (7) whether the DNA blood-draw provisions are 
excessive in relation to the nonpunitive purpose, if any. See Reynard, 220 F. 
Supp. 2d at 1161-62 (citing Kennedy, 372 U.S. at 168-69, 83 S. Ct. at 567-68)). Our task is not simply to count the factors, but also to weigh them. 
Rodriguez, 93 S.W.3d at 68. Accordingly, we will discuss the varying weight 
to be given each factor. See id. 
        Appellants argue under the first Kennedy factor that the disabilities 
imposed on them by being chronicled in a DNA database are: (1) the prospect 
of infinite government monitoring in violation of their right to privacy; (2) 
interference with their right to receive effective assistance of counsel because 
they were not advised of the nature and possible consequences of their plea at 
their adjudication hearing; and (3) the inability to have their records fully sealed. 
An inmate or probationer has diminished constitutional rights, including a 
diminished right to privacy. See, e.g., Griffin v. Wisconsin, 483 U.S. 868, 874, 
107 S. Ct. 3164, 3169 (1987). Additionally, because the statute allows 
limited DNA analysis of blood samples and limited distribution of the information 
acquired from the samples, wrongful disclosures that may violate privacy rights 
should be minimized. See Tex. Gov’t Code Ann. § 411.143(c)(3) (requiring 
personal identification information to be removed prior to establishing a 
population statistics database, etc.); see also Landry v. Attorney General, 709 
N.E.2d 1085, 1095-96 (Mass. 1999) (holding that where DNA Act provides 
safeguards against wrongful use of DNA information and limits purposes for 
which DNA records may be distributed, plaintiffs’ speculation that data may be 
used wrongfully is contrary to language of Act), cert. denied, 528 U.S. 1073 
(2000). Appellants’ privacy concerns do not demonstrate the present 
imposition of an affirmative disability on them. 
        Appellants’ next contention, that because they were not advised of a yet-to-be enacted law requiring them to submit a DNA sample, they received 
ineffective assistance of counsel at their adjudication hearings, likewise, does 
not demonstrate the imposition of an affirmative disability on Appellants. The 
record before us does not show, nor do Appellants argue, that they would not 
have pleaded guilty at their adjudication hearings had they been advised of the 
possibility that at some point in time they could be required to submit a DNA 
sample. In the absence of such evidence, the second prong of the Strickland 
ineffective assistance of counsel claim cannot be met. See Brasfield v. State, 
30 S.W.3d 502, 505 (Tex. App.—Texarkana 2000, no pet.); see also Appeal 
in Maricopa County, 930 P.2d at 499. 
        Finally, Appellants’ arguments that they will be unable to have their 
juvenile records fully sealed if they provide a DNA sample do not demonstrate 
the imposition of an affirmative disability upon Appellants. Appellants cite no 
evidence showing any efforts, unsuccessful or otherwise, that they have made 
to have their records sealed; therefore, their sealing argument is premature. 
See In re J.R., 793 N.E.2d 687, 702 (Ill. App. Ct. 2003) (holding that 
respondent’s argument that statute barring expungement of previously 
submitted blood specimens was unconstitutional was premature because he 
had made no effort to expunge the information). We simply cannot say 
whether or not Appellants may be successful in a future action to seal their 
records.
        Thus, applying the first Kennedy factor, we conclude that the Texas DNA 
statute imposes only a minimal affirmative disability, if any, on qualifying 
offenders because it merely requires them to contribute a one-time “DNA 
fingerprint” to the State’s DNA database. See, e.g., Smith, 123 S. Ct. at 
1145-46, 1154 (holding Alaska’s sex offender registration statute was 
nonpunitive and did not violate Ex Post Facto Clause, despite lifetime 
registration and quarterly verification requirements); Ex parte Robinson, 116 
S.W.3d 794, 798 (Tex. Crim. App. 2003) (holding 1999 version of Texas’s Sex 
Offender Registration Program, like the 1997 version, was nonpunitive in both 
intent and effect); Rodriguez, 93 S.W.3d at 69-79 (holding Texas’s sex 
offender registration statute was nonpunitive and did not violate Ex Post Facto 
Clause); State v. Ward, 869 P.2d 1062, 1066 (Wash. 1994) (holding 
Washington’s sex offender registration statute was nonpunitive and did not 
violate Ex Post Facto Clause). 
        With regard to the second Kennedy factor—whether the collection of 
blood historically constituted punishment—Appellants contend that requiring 
submission of a DNA sample, while not traditional in the sense that DNA 
technology is modern, is primarily linked with punishment for criminal and 
juvenile offenses. In support of this argument, Appellants rely on Texas 
Government Code sections 411.1471, 411.1472, 411.148, and 411.150. 
Tex. Gov’t Code Ann. §§ 411.1471-.1472, 411.148, 411.150 (Vernon Supp. 
2004). These provisions were, however, enacted or amended within the past 
four years and cannot be viewed as a historical pattern evidencing the use of 
blood draws as punishment. See Rodriguez, 93 S.W.3d at 72 (noting that no 
historic analog existed for viewing sex offender registration statutes as 
historically punitive). We have located no authority to support the proposition 
that the collection of blood, for identification purposes or otherwise, has 
historically been regarded as punishment. See generally Breithaupt v. Abram, 
352 U.S. 432, 435, 437, 77 S. Ct. 408, 410-11 (1957) (recognizing that 
“there is nothing ‘brutal’ or ‘offensive in the taking of a sample of blood when 
done, . . . under the protective eye of a physician” and holding that “a blood 
test taken by a skilled technician is not such ‘conduct that shocks the 
conscience’ . . . [or] such a method of obtaining evidence that it offends a 
‘sense of justice.’”). Accordingly, to the extent the second Kennedy factor is 
weighed, we weigh it in favor of a finding that the DNA statute is nonpunitive. 
See Rodriguez, 93 S.W.3d at 72. 
        Appellants concede that, under the third Kennedy factor, because the 
DNA statute automatically applies to juveniles adjudicated of qualifying 
offenses, no scienter is required to trigger its application. See Reynard, 220 F. 
Supp. 2d at 1162. The lack of scienter element supports a nonpunitive 
construction of the statute. Rodriguez, 93 S.W.3d at 72. 
        Under the fourth Kennedy factor—whether the statute promotes the 
traditional aims of punishment—Appellants argue that the overreaching 
consequences of the DNA statute deter sex offenses and that imposition of the 
additional penalty of a DNA sample requirement on past criminal conduct alone 
is a form of retribution. The establishment of a DNA databank may deter 
recidivism on the part of convicted persons. State v. Olivas, 856 P.2d 1076, 
1085-86 (Wash. 1993); In re Nicholson, 724 N.E.2d 1217, 1221 (Ohio Ct. 
App. 1999); compare People v. King, 99 Cal.Rptr.2d 220, 228 (Cal. Ct. App. 
2000) (stating that “[s]peedy identification and apprehension of an offender, 
therefore, will prevent crime even if DNA testing has no deterrent effect”), cert. 
denied, 532 U.S. 950 (2001). Thus, the Texas DNA statute may promote, to 
some extent, the traditional deterrent aim of punishment. Nonetheless, the 
legislatively stated purpose of the statute is identification, i.e. to exclude or 
include registrants as suspects in past and future offenses, not deterrence. See 
Tex. Gov’t Code Ann. § 411.143(a). And, the “threat” of submitting to a blood 
draw, i.e. a needle stick, does not, in itself, seem significant enough to deter 
possible offenders from committing sex offenses. See, e.g., Schmerber v. 
California, 384 U.S. 757, 771, 86 S. Ct. 1826, 1836 (1966) (noting, in DWI 
case, that blood tests are commonplace and for most people involve no risk, 
trauma, or pain). Consequently, although the DNA statute may serve some 
incidental deterrent purpose, the mere presence of a deterrent purpose does not 
render the DNA statute criminal in effect. Smith, 123 S. Ct. at 1152. This 
Kennedy factor also weighs in favor of a nonpunitive construction of the DNA 
statute.
        Appellants submit that under the fifth Kennedy factor the DNA statute 
applies to conduct that has already been deemed a crime because a juvenile 
must have committed a qualifying offense before he is required to provide a 
DNA sample. We agree that the DNA statute applies to behavior that is already 
a crime and that a statute’s retroactive application to criminal behavior is more 
likely to be characterized as a penal sanction. See Rodriguez, 93 S.W.3d at 74. 
This factor alone, however, is insufficient to render the statute punitive because 
the fact that an adjudication for a qualifying offense triggers application of the 
DNA statute is a characteristic common to all regulatory disabilities that follow 
from a prior conviction, such as the loss of the right to vote. Id. Moreover, the 
submission of a DNA sample does not alter the punishment assessed or 
imposed upon a juvenile. As the State points out, the DNA statute provides 
new penalties only if a juvenile refuses to provide a DNA specimen and thereby 
violates a condition of his probation. See Tex. Gov’t Code Ann. § 411.154 
(Vernon 1998) (stating that order issued to enforce compliance with DNA 
statute is appealable as criminal matter and is reviewable for abuse of 
discretion). Because noncompliance with the DNA statute is punished as a 
separate offense, any potential ex post facto problem is diminished. Reynard, 
220 F. Supp. 2d at 1162 (citing Russell v. Gregoire, 124 F.3d 1079, 1088-89 
(9th Cir. 1997), cert. denied, 523 U.S. 1007 (1998)). 
        Appellants argue that the sixth Kennedy factor is of minimal importance 
because almost any statute encompasses some nonpunitive, rational purpose. 
The DNA statute serves a nonpunitive purpose by reducing the risk that 
innocent persons may be wrongly held for crimes that they did not commit. 
146 Cong. Rec. H8572-01, and *H8576; see also 146 Cong. Rec. S11645-02, 
at *S11646 (reporting that DNA testing has exonerated over seventy-five 
convicted persons in the United States and Canada). Thus, the sixth Kennedy 
factor weighs in favor of a nonpunitive construction of the DNA statute.        With regard to the final Kennedy factor, Appellants contend that the DNA 
statute is excessive because the public is already protected from sex offenders 
by the sex offender registration laws. Consequently, Appellants argue that “the 
risks of the DNA statute greatly outweigh any legitimate government interest.” 
The sex offender registration law does not, however, create the type of 
information that the DNA statute seeks to obtain. Sex offender registration 
information cannot assist law enforcement in exonerating those convicted of 
crimes involving DNA evidence. See Tex. Gov’t Code Ann. § 411.143(b); see 
generally Nicholas v. Goord, No. 01Civ.7891(RCC)(GWG., 2003 WL 256774, 
at *9, 11 (S.D.N.Y. Feb. 6, 2003). 


 Thus, the DNA statute seeks different 
information than the sex offender registration statute, and the information is 
used for a different purpose. Additionally, possible privacy risks posed by the 
DNA statute have been legislatively minimized by specific statutory provisions 
mandating that identifying information be removed from the samples when they 
are used for certain purposes. See Tex. Gov’t Code Ann. § 411.143(c)(3). We 
hold that the blood draw provisions of the DNA statute are not excessive in 
relation to the nonpunitive purposes for which the statute was enacted. Accord 
Robinson, 116 S.W.3d 794 (pointing out that court had already thoroughly 
applied Kennedy factors to 1997 version of Sex Offender Registration Program 
and found it nonpunitive in effect); Rodriguez, 93 S.W.3d at 68-79 (holding, 
after applying Kennedy factors, sex offender registration statute was not 
excessive in relation to nonpunitive purpose of statute). 
        In summary, the DNA statute does not criminalize any act or omission 
that Appellants committed prior to enactment of the statute and does not inflict 
greater punishment on Appellants for their adjudicated offenses. An application 
and weighing of the Kennedy factors demonstrates that the DNA statute is not 
“so punitive” in effect that it prevents this court from legitimately viewing the 
DNA statute as regulatory in nature. See Reynard, 220 F. Supp. 2d at 1162. 
Accordingly, we hold that Appellants have failed to demonstrate that, as 
applied to them, the Texas DNA statute violates the Ex Post Facto Clause. 



        
C. Double Jeopardy Analysis 

        Appellants also argue that the DNA statute violates the Double Jeopardy 
Clause of the United States Constitution. That Clause provides that no “person 
[shall] be subject for the same offence to be twice put in jeopardy of life or 
limb.” U.S. Const. amend. V. The Clause protects only against the imposition 
of multiple criminal punishments for the same offense and then only when such 
occur in successive proceedings. Hudson v. United States, 522 U.S. 93, 99, 
118 S. Ct. 488, 493 (1997). 
        Here, Appellants were neither prosecuted a second time for the crimes for 
which they were adjudicated nor were they punished a second time for those 
crimes. Thus, Appellants have not been placed in double jeopardy by the DNA 
statute, and the Double Jeopardy Clause does not apply here. See Kellogg, 
728 N.Y.S.2d at 647 (holding retroactive application of DNA statute did not 
violate Double Jeopardy Clause). Appellants have failed to demonstrate that, 
as applied to them, the Texas DNA statute violates the Double Jeopardy 
Clause. We overrule Appellants’ first issue. 
V. DNA Statute Is Not an Unreasonable Search or Seizure
        In their second issue, Appellants argue that a blood draw ordered 
pursuant to the DNA statute constitutes an unreasonable search and seizure 
under the Fourth Amendment. Appellants argue that in these cases no probable 
cause or exigent circumstances exist justifying a warrantless search and 
seizure. The State contends that requiring a DNA specimen from a person who 
has committed a qualifying offense does not offend the Fourth Amendment.        The Fourth Amendment states, 
The right of the people to be secure in their persons, houses,
papers, and effects, against unreasonable searches and seizures,
shall not be violated, and no Warrants shall issue, but upon
probable cause, supported by Oath or affirmation, and particularly
describing the place to be searched, and the persons or things to
be seized.

U.S. Const. amend. IV. Blood testing procedures plainly constitute searches
of persons and depend antecedently upon seizures of persons within the
meaning of the Fourth Amendment. See Schmerber, 384 U.S. at 767, 86 S.
Ct. at 1834. The Fourth Amendment does not, however, proscribe all searches
and seizures, but only those that are unreasonable. Skinner v. Ry. Labor
Executives’ Ass’n, 489 U.S. 602, 619, 109 S. Ct. 1402, 1414 (1989). The
reasonableness of a search or seizure “depends on all of the circumstances
surrounding the search or seizure and the nature of the search or seizure itself.”
Id. (citing United States v. Montoya de Hernandez, 473 U.S. 531, 537, 105 S.
Ct. 3304, 3308 (1985)).
        Traditionally, courts evaluating the reasonableness of a search or seizure 
have applied a classic Fourth Amendment “balancing” analysis. 


 Under the 
balancing analysis, a reviewing court determines whether the search was 
reasonable by weighing the government’s interest in conducting the search and 
the degree to which the search actually advances that interest against the 
gravity of the intrusion upon personal privacy. Brown v. Texas, 443 U.S. 47, 
51, 99 S. Ct. 2637, 2640 (1979). A central concern in balancing these 
competing considerations in a variety of settings has been to assure that an 
individual’s reasonable expectation of privacy is not subject to arbitrary 
invasions solely at the unfettered discretion of officers in the field. Id. Three 
Texas cases have applied, or followed precedent that has applied, the balancing 
test to claims that an order requiring submission of a DNA sample constituted 
an unreasonable search and seizure and have found no Fourth Amendment 
violation. See Velasquez v. Woods, 329 F.3d 420, 421 (5th Cir. 2003) 
(following Shaffer, Rise, and Jones, applying balancing test, as well as Second 
Circuit case applying special needs analysis); Rome v. Burden, No. 03-01-629-CV, 2002 WL 31426177, at *2 (Tex. App.—Austin Oct. 31, 2002, pet. 
denied) (not designated for publication); Groceman v. United States Dep’t of 
Justice, No. CIV.A.301CV1619G, 2002 WL 1398559, at *3-4 (N.D. Tex. Jun. 
26, 2002) (memo. order). 



        Two recent United States Supreme Court cases, however, cast doubt 
upon the continuing applicability of a pure traditional balancing test analysis as 
the proper test for determining the reasonableness of a search or seizure, at 
least in evaluating warrantless, suspicionless searches. Ferguson v. City of 
Charleston, 532 U.S. 67, 121 S. Ct. 1281 (2001); City of Indianapolis v. 
Edmond, 531 U.S. 32, 121 S. Ct. 447 (2000); see also Goord, 2003 WL 
256774, at *9, 11. 


 In Ferguson, the Supreme Court held that a statute 
authorizing a state hospital to test the urine of pregnant women receiving 
prenatal care at the hospital was unreasonable under the Fourth Amendment 
because the State failed to show a special need for the information acquired 
apart from the normal need for law enforcement. 532 U.S. at 84, 121 S. Ct. 
at 1292. In Edmond, the Supreme Court held that a warrantless, suspicionless 
stop of random motor vehicles at a drug interdiction checkpoint for the purpose 
of an exterior canine sniff was unreasonable under the Fourth Amendment 
because the State failed to show a special need for the information acquired in 
the search apart from the normal need for law enforcement; indeed, the very 
purpose of the stop was law enforcement. 531 U.S. at 46-47, 121 S. Ct. at 
456-57.
        In both Ferguson and Edmond, the Supreme Court began with the premise 
that warrantless searches or seizures not based upon an individualized suspicion 
of wrongdoing violate the Fourth Amendment. Ferguson, 532 U.S. at 76-77, 
121 S. Ct. at 1287-88; Edmond, 531 U.S. at 37, 121 S. Ct. at 451. The Court 
recognized that it had, however, in limited circumstances upheld the 
constitutionality of certain regimes of warrantless, suspicionless searches where 
the program compelling the search or seizure was designed to serve “special 
needs, beyond the normal need for law enforcement.” Edmond, 531 U.S. at 
37, 121 S. Ct. at 451 (recognizing prior case upholding constitutionality of 
brief, suspicionless seizures of motorists at fixed border patrol checkpoints). 
The Court then analyzed the programs at issue in Ferguson and Edmond to 
determine whether the warrantless, suspicionless searches and seizures in 
those cases fell into this narrow category of permissible, constitutional searches 
and seizures based on special needs of law enforcement. Ferguson, 532 U.S. 
at 81-86, 121 S. Ct. 1290-93; Edmond, 531 U.S. at 40-48, 121 S. Ct. at 453-58. Concluding that the programs had as their primary purpose the discovery 
of evidence against particular individuals suspected of committing a specific 
crime—an ordinary or normal law enforcement function—the Supreme Court 
declared the searches and seizures in both Ferguson and Edmond unreasonable 
under the Fourth Amendment. Ferguson, 532 U.S. at 85-86, 121 S. Ct. 1292-93; Edmond, 531 U.S. at 48, 121 S. Ct. at 458. 
        Under the analysis utilized by the Supreme Court in Ferguson and 
Edmond, we must determine whether the warrantless, suspicionless search and 
seizure mandated by the DNA statute constitutes a “special need, beyond the 
normal need for law enforcement.” See Goord, 2003 WL 256774, at *11. To 
answer this question, we must first ascertain the “primary purpose” of the 
Texas DNA statute. See id. We have already determined under our ex post 
facto analysis that the principal purpose of the Texas DNA database is to assist 
in the investigation or prosecution of sex-related offenses or other offenses in 
which biological evidence is recovered and to exclude or identify suspects. 
Tex. Gov’t Code Ann. § 411.143(a)-(b). The secondary purposes of the DNA 
database are to assist in the recovery or identification of human remains from 
a disaster or for humanitarian purposes; to assist in the identification of living 
or deceased missing persons; and, after personal identifying information is 
removed, to establish a population statistics database, assist in identification 
research and protocol development, and assist in database or DNA laboratory 
quality control. Id. § 411.143(c)(1)-(3). 
        We next analyze whether these purposes demonstrate a need for the 
DNA samples beyond the normal need for law enforcement. See Goord, 2003 
WL 256774, at *12 (citing Nat’l Treasury Employees Union v. Von Raab, 489 
U.S. 656, 665, 109 S. Ct. 1384, 1390-91 (1989)); see also Edmond, 531 U.S. 
at 41-42, 121 S. Ct. at 454-55. The Goord court, reviewing a Fourth 
Amendment challenge to a DNA statute similar to the Texas DNA statute, 
explained that the New York DNA indexing statute’s primary purpose was not 
a “normal” or “ordinary” purpose of law enforcement: 
Obviously, obtaining a DNA sample for a databank is within the
scope of law enforcement, broadly defined, and certainly has a
relationship to the solving of crimes. But the primary purpose of
collecting samples for the databank is not for the State to
determine that a particular individual has engaged in some specific
wrongdoing. Unlike a blood or urine sample that may contain
traces of drugs, the samples of blood for the DNA databank prove
nothing by themselves regarding whether the donor has committed
a crime. . . . They merely offer the potential that some very small
percentage may be relevant to solving a crime that in all likelihood
has not even been committed at the time of the search.

2003 WL 256774, at *13; see also Reynard, 220 F. Supp. 2d at 1166-68
(holding federal DNA indexing statute served special needs, beyond normal or
ordinary needs of law enforcement).
        Unlike the programs in Edmond and Ferguson, the Texas DNA statute is 
not designed to discover and produce evidence of a specific individual’s criminal 
wrongdoing. Goord, 2003 WL 256774, at *13. The purposes of the Texas 
DNA statute serve “special needs,” not “normal” or “ordinary” purposes of law 
enforcement. See United States v. Kimler, 335 F.3d 1132, 1146 (10th Cir.) 
(holding federal DNA Backlog Elimination Act of 2000 constitutional under 
special needs analysis), cert. denied, ___ S. Ct. ___, 2003 WL 22736543 (U.S. 
Dec. 8, 2003); Goord, 2003 WL 256774, at *14 (holding New York’s DNA 
indexing program constitutional under special needs analysis); Miller, 259 F. 
Supp. 2d at 1177 (holding Patriot Act’s DNA provision constitutional under 
special needs analysis); Sczubelek, 255 F. Supp. 2d at 319-23 (holding federal 
DNA Backlog Elimination Act of 2000 constitutional under special needs 
analysis); Vore, 281 F. Supp. 2d at 1134, 1137 (same); Reynard, 220 F. Supp. 
2d at 1169 (same); Kellogg, 728 N.Y.S.2d at 647 (holding New York’s DNA 
statute constitutional under special needs analysis); Olivas, 856 P.2d at 1086 
(holding Washington’s DNA statute constitutional under special needs analysis). 
        Even where a court concludes that a statute or program qualifies as a 
“special need, beyond the normal need for law enforcement,” the 
reasonableness of the intrusion must then still be evaluated through a balancing 
analysis. See Goord, 2003 WL 256774, at *11, 14. Thus, having determined 
that the Texas DNA statute falls within the “special needs” exception to the 
unconstitutionality of a warrantless, suspicionless search or seizure, we next 
conduct a fact-specific balancing of the intrusion on Appellants’ Fourth 
Amendment rights against the promotion of legitimate governmental interests 
in solving past and future crimes, identifying human remains and missing 
persons, establishing a population statistics database, and assisting in 
identification research, protocol development, and database or DNA laboratory 
quality control. Id.; see also Miller, 259 F. Supp. 2d at 1177. 
        The physical intrusion of providing a blood sample for DNA testing is 
minimal. See, e.g., Skinner, 489 U.S. at 624-26, 109 S. Ct. at 1417-18 
(discussing how slight an intrusion blood and breath tests pose). Additionally, 
a juvenile’s expectation of privacy is significantly diminished by the fact that he 
or she has been adjudicated delinquent for committing a sexual offense. See 
Appeal in Maricopa County, 930 P.2d at 501 (recognizing diminished privacy 
right of juvenile delinquent); see also Goord, 2003 WL 256774, at *16 
(recognizing “convicted felons should be entitled to almost no expectation that 
their identities will remain secret”). We balance the fairly minimal intrusiveness 
of the sampling and a juvenile’s reduced privacy expectations 


 against the 
public’s interest in effective law enforcement, crime prevention, and the 
identification and apprehension of those who commit sex offenses and conclude 
that the governmental interest promoted by the DNA statute rightfully 
outweighs its corresponding minimal physical intrusion and encroachment upon 
a juvenile’s privacy. See Appeal in Maricopa County, 930 P.2d at 501. 
Consequently, under either existing federal case law in Texas applying the 
traditional balancing analysis 


 or under the Ferguson and Edmond special needs 
analysis, we hold that the search and seizure occasioned by the DNA statute 
does not violate the Fourth Amendment to the United States Constitution. 


 In 
their facial Fourth Amendment challenge, Appellants have failed to establish 
that the Texas DNA statute operates unconstitutionally. We overrule 
Appellants’ second issue. 
VI. DNA Statute Does Not Violate Right Against Self-Incrimination
        Appellants argue in their third issue that ordering them to place their DNA 
samples in the DNA database for the purpose of investigation and prosecution 
of future crimes violates their rights against self-incrimination under the United 
States and Texas Constitutions. Their argument is based on the dissent in 
Schmerber, which emphasizes the testimonial value of a person’s DNA imprint; 
on their assertion that the Texas Constitution provides greater protections 
against self-incrimination than the United States Constitution; 


 and on their 
understanding of Ex parte Renfro, 999 S.W.2d 557 (Tex. App.—Houston [14th 
Dist.] 1999, pet. ref’d). The State responds that a blood sample is not 
testimonial in nature; thus, the DNA statute does not violate the Self-Incrimination Clause. 
        The Fifth Amendment to the United States Constitution states, “No 
person shall be . . . compelled in any criminal case to be a witness against 
himself . . . .” U.S. Const. amend. V. In applying the Fifth Amendment 
privilege against self-incrimination, the United States Supreme Court draws a 
distinction between a suspect’s communications or testimony and real or 
physical evidence obtained from the suspect. Schmerber, 384 U.S. at 760-61, 
86 S. Ct. at 1832. While the Fifth Amendment protects a suspect from being 
compelled to provide evidence of a testimonial or communicative nature, it does 
not protect a suspect from being compelled to provide real or physical evidence. 
Id. at 763-64, 86 S. Ct. at 1832. In Schmerber, the Supreme Court held that 
a compelled extraction of a blood sample and its chemical analysis, for blood 
alcohol content, does not amount to testimonial or communicative evidence and 
therefore is not prohibited by the Fifth Amendment. Id. at 765, 86 S. Ct. at 
1832-33. Likewise, the Fifth Amendment privilege against self-incrimination is 
not violated by the taking of blood under Texas Family Code § 54.0405(a)(2)(B) 
for DNA analysis. See Shaffer, 148 F.3d at 1181; Belgarde v. Montana, 123 
F.3d 1210, 1214 (9th Cir. 1997); Boling, 101 F.3d at 1340; Vore, 281 F. 
Supp. 2d at 1137-38; Reynard, 220 F. Supp. 2d at 1174; Forrest v. State, No. 
2002-KA-00206-COA, ___ So.2d ___, 2003 WL 21916440, at *3 (Miss. Ct. 
App. Aug. 12 2003); Cooper, 943 S.W.2d at 705; Norman, 660 N.W.2d at 
557 (holding that obtaining DNA sample by oral swab does not violate Fifth 
Amendment); Johnson, 529 S.E.2d at 779. 
        Moreover, Renfro does not support Appellants’ position. In Renfro, the 
court analyzed a condition of probation that required the defendant to take a 
polygraph to determine whether the condition violated the privilege against self-incrimination: 
Although the Appellant has a duty to answer the polygraph
examiner’s questions truthfully, unless he invokes the privilege,
shows a realistic threat of self-incrimination and nevertheless is
required to answer, no violation of his right against self-incrimination is suffered. The mere requirement of taking the test
in itself is insufficient to constitute an infringement of the privilege.

999 S.W.2d at 561 (citations omitted). Here, Appellants claim that the order 
requiring them to place their DNA in an accessible DNA database exposes them 
to a realistic threat of self-incrimination and that therefore they are being forced 
to submit evidence against themselves. Appellants, however, have not yet 
submitted blood samples. Therefore, this issue is not ripe. See Waco ISD v. 
Gibson, 22 S.W.3d 849, 853 (Tex. 2000) (stating that ripeness doctrine 
prevents premature adjudication of hypothetical or contingent situations).        We hold that the Texas DNA statute does not violate the Self-Incrimination Clause. Appellants have failed to demonstrate that, as applied to 
them, the Texas DNA statute violates the Self-Incrimination Clause. We 
overrule Appellants’ third issue. 
VII. Legal and Factual Sufficiency
        Appellants complain in issue four that the evidence is both legally and 
factually insufficient to support the trial court’s finding that they should be 
subject to the DNA statute. Appellants base their argument on the fact that 
R.W.W. has been excused from sex offender registration and contend that the
other Appellants may still exercise their right to request to be excused from
registration. Consequently, they contend that the evidence is insufficient to
subject them to the DNA statute’s blood draw requirement. The State responds
that each of the Appellants was adjudicated of a qualifying offense and is
therefore subject to the requirements of the DNA statute. 
         
A. Standard of Review 
        In reviewing Appellants’ sufficiency challenge to the evidence supporting 
their dispositions, we review the evidence under the civil standard. In re J.D.P., 
85 S.W.3d 420, 422 (Tex. App.—Fort Worth 2002, no pet.). In reviewing legal 
sufficiency, we consider only the evidence and inferences tending to support 
the findings under attack and set aside the judgment only if there is no evidence 
of probative force to support the findings. In re T.K.E., 5 S.W.3d 782, 785 
(Tex. App.—San Antonio 1999, no pet.); see In re A.S., 954 S.W.2d 855, 858 
(Tex. App.—El Paso 1997, no pet.); In re S.A.M., 933 S.W.2d 744, 745 (Tex. 
App.—San Antonio 1996, no writ). In reviewing Appellants’ factual sufficiency 
claim, we consider and weigh all the evidence and set aside the judgment only 
if the finding is so against the great weight and preponderance of the evidence 
as to be manifestly unjust. T.K.E., 5 S.W.3d at 785; see In re K.L.C., 972 
S.W.2d 203, 206 (Tex. App.—Beaumont 1998, no pet.); A.S., 954 S.W.2d at 
862.
        
B. Sufficiency of the Evidence 
        The evidence in each of Appellants’ records demonstrates that they were 
all adjudicated for either indecency with a child or aggravated sexual assault of 
a child, or both. Each of these offenses is a “reportable conviction or 
adjudication” subject to the sex offender registration program. See Tex. Code 
Crim. Proc. Ann. art. 62.01(5)(A), 62.02(a) (Vernon Supp. 2004). At the 
disposition hearings conducted in accordance with Texas Family Code section 
54.04, each Appellant was placed on probation. Tex. Fam. Code Ann. § 54.04. 
As a condition of probation, each Appellant was required to register in the sex 
offender registration program. Then, after the DNA statute was passed, the 
trial court amended each Appellants’ probation conditions to require him to 
submit a DNA specimen. 
        Appellants’ argument that R.W.W. has been excused from sex offender
registration and therefore cannot be required to comply with the DNA statute
is contrary to the statute’s terms. R.W.W. and the other Appellants were
adjudicated of a qualifying offense under Chapter 62. See Tex. Code Crim.
Proc. Ann. art. 62.01(5)(A). A plain reading of the DNA statute requires the 
court to include two terms in a juvenile sex offender’s conditions of probation: 
one of which is the registration as a sex offender; the other, which is not
contingent upon the first, is submission of a DNA specimen. Tex. Fam. Code
Ann. § 54.0405(a)(2); see also See Sanchez v. State, 995 S.W.2d 677, 683
(Tex. Crim. App.) (stating we interpret a statute in accordance with the plain
meaning of its language unless the language is ambiguous or the plain meaning
leads to absurd results), cert. denied, 528 U.S. 1021 (1999). The fact that a
juvenile may be excused from registration does not alter the fact that he was
placed on probation for an offense requiring sex offender registration or nullify
the independent requirement of a DNA sample.
 

 Thus, here, because 
Appellants were adjudicated of a qualifying offense and were placed on
probation, the prerequisites for applying the DNA statute were met. See Tex.
Fam. Code Ann. § 54.0405(b) (specifying that DNA statute applies to child 
placed on probation for conduct constituting an offense requiring registration 
as sex offender). 
        Likewise, we decline to adopt Appellants’ position that, because 
Appellants other than R.W.W. may still avail themselves of the opportunity to 
have their sex offender registration excused, their adjudications do not trigger 
the DNA statute’s application. The statute allowing juveniles to request to be 
excused from sex offender registration does not have a time limit. See Tex. 
Code Crim. Proc. Ann. art. 62.13(l) (stating that a person who has registered 
as a sex offender, regardless of when the delinquent conduct or the 
adjudication for the conduct occurred, may file a motion seeking excusal from 
registration). Consequently, Appellants’ argument would render the DNA
statute meaningless because it could not take effect until the juvenile decided
to file a motion to excuse sex offender registration. Such a reading is not
permissible. See Cont’l Cas. Ins. Co. v. Functional Restoration Assocs., 19
S.W.3d 393, 402 (Tex. 2000) (stating that courts should avoid a statutory
construction that renders all or a part of a statute meaningless).
        We hold that there was evidence of probative force supporting the trial 
court’s amendment of Appellants’ probation conditions to add the requirement 
that they provide a DNA specimen. Accord J.D.P., 85 S.W.3d at 429 (holding 
evidence legally sufficient to support jury’s finding that appellant should be 
placed in Texas Youth Commission). The trial court’s amendment of the 
probation conditions in each case was, likewise, not so against the great weight 
and preponderance of the evidence as to be manifestly unjust. See In re C.C., 
13 S.W.3d 854, 859 (Tex. App.—Austin 2000, no pet.) (holding evidence 
factually sufficient to support juvenile court’s finding that reasonable efforts 
were made to prevent need to remove appellant from home). Accordingly, we 
overrule Appellants’ fourth issue. 
 

VIII. Conclusion 
        Having overruled each of Appellants’ issues, we affirm the trial court’s 
judgments.
 
                                                          SUE WALKER 
                                                          JUSTICE
 
PANEL F:   CAYCE, C.J.; WALKER, J.; and SAM J. DAY, J. (Retired, Sitting 
by Assignment). 
 
DELIVERED: December 18, 2003